UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |
|---|---|
| In re:<br><br>JON F. CONANT,<br>    Debtor. | **05**CV **11342**GAC<br><br>Case No. 04-18542 - RS<br>Chapter 7 |
| TIG INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>JON CONANT, HILDA AYER<br>ANDERSON, and THE AYER-<br>ANDERSON FOUNDATION<br><br>    Defendants,<br><br>    v.<br><br>JOHN AQUINO, Chapter 7 Trustee<br><br>    Nominal Defendant | Adv. Proc. No. 05-01082 |

## MOTION OF TIG INSURANCE COMPANY TO
## WITHDRAW THE REFERENCE
## WITH RESPECT TO ADVERSARY PROCEEDING
## (AND INCORPORATED MEMORANDUM OF LAW)

## I.    INTRODUCTION

TIG Insurance Company ("TIG"), through its counsel, brings this motion pursuant

to 28 U.S.C. § 157(d) to withdraw the reference of the above-referenced adversary

proceeding (the "Coverage Action.") The Coverage Action seeks a finding of no

coverage in connection with an underlying liability action wherein it is alleged that,

1

among other things, attorney Jon Conant, an insured under a TIG issued insurance policy, mishandled certain client funds (the "Underlying Liability Action"). As explained more fully below, "cause" exists to withdraw the reference for two reasons. First, the Coverage Action is a non-core matter and, therefore, the bankruptcy court (the "Bankruptcy Court") may not make final findings of fact or conclusions of law. Stated differently, the District Court will be required to conduct a *de novo* review of any finding of fact or conclusion of law to which a party objects. Second, as TIG has properly made a jury trial demand, pursuant to the Massachusetts Local Bankruptcy Rules, the Coverage Action must be transferred to the District Court for trial. Given that the District Court will likely be conducting a *de novo* review of any findings of fact or rulings of law[1] and given that the trial must be conducted in the District Court, considerations of judicial economy and uniformity provide the requisite "cause" to grant TIG's present motion to withdraw the reference from the Bankruptcy Court.

## II.    FACTUAL BACKGROUND

1.    On October 20, 2004 (the "Petition Date"), Jon F. Conant ("Conant" or the "Debtor") filed a Chapter 7 bankruptcy petition in the Bankruptcy Court.

2.    Prior to the Petition Date, TIG had issued a Lawyers Professional Liability Policy, No. AP 37992447 to the Debtor with a policy period of December 18, 2002 to December 18, 2003 (the "Policy"). Pursuant to Endorsement No. 5, the Policy was cancelled effective August 7, 2003 for non-payment of premium.

3.    The Policy, as originally issued, subject to all of its terms and conditions, provides coverage to Conant on a "claims made and reported" basis for a policy period

---

[1] By way of example, any findings or fact or rulings of law to which a party objects in connection with a dispositive motion such as motions for summary judgment would be reviewed by the District Court on a *de novo* basis. See *infra*, at p. 5.

2

running from December 18, 2002 to December 18, 2003. Subject to a deductible of $5,000 per claim, the Policy provides limits of liability in the amount of $1 million for "each claim" and $2 million in the aggregate. The Policy further provides that, regardless of the number of plaintiffs in a proceeding, a single lawsuit shall constitute a single claim.

4.     Prior to the Petition Date, on April 28, 2003, Timothy King and Ayer-Anderson Foundation, Inc. (the "Ayer Plaintiffs") filed the Underlying Liability Action against Conant in Suffolk Superior Court alleging that Conant mishandled and/or failed to account for client funds, refused to provide the plaintiffs with an accounting, and otherwise defrauded his clients.[2]

5.     Prior to the Petition Date, TIG initiated a declaratory judgment action in the United States District Court for the District of Massachusetts seeking, *inter alia*, a declaration as to various coverage issues with respect to the Policy (the "District Court Action"). That action, which had been pending only two weeks before it was stayed by Conant's bankruptcy filing, was voluntarily dismissed on February 16, 2005 so that an adversary proceeding in the bankruptcy court could be initiated.

---

[2] On January 7, 2005, a Massachusetts state court (van Gestel, J.) allowed the Ayer Plaintiffs motion for partial summary judgment finding that Conant mishandled the Ayer Plaintiffs' funds and stated that:
"Conant himself has admitted his failure to account for [the Ayer Plaintiffs'] funds. He maintained no ledger or other accounting of the transactions involving [the Ayer Plaintiffs'] funds in his IOLTA account, or of the checks he wrote to himself. Further, he maintained no effective billing records. Indeed, when asked for an accounting in this proceeding, Conant simply gave plaintiffs a mass of documents and suggested they should do it themselves. Conant has not in any way met his burden of proof that he properly disposed of [the Ayer Plaintiffs'] funds, which he is known to have received in his fiduciary capacity as her attorney. Consequently, summary judgment in the plaintiffs' favor, at least on the issue of liability, is warranted on Count I of the First Amended Complaint. While the Court cannot, on the present record, determine the correct amount of the funds mishandled. Therefore, damages on Count I must remain open."
*See* Exhibit A, "Memorandum and Order on Cross Motions for Summary Judgment," dated January 7, 2005, at pp. 2-3.

6.      Thus, on February 16, 2005, concurrently with the dismissal of the District Court Action, TIG filed the Coverage Action in the Bankruptcy Court seeking rescission and declaratory relief and naming as defendants Conant, Hilda Ayer Anderson, The Ayer Anderson Foundation and John Aquino in his capacity as Chapter 7 Trustee, bearing Adv. Pro. No. 05-1082.[3]  The Coverage Action seeks, *inter alia*, a declaration that the Policy issued to Conant is rescinded and void *ab initio* because, during the negotiations of the Policy, all of which occurred prior to the Petition Date, Conant made material misstatements and omissions that violated a condition precedent to coverage under the express terms of the Policy that increased the risk of loss.

7.      TIG has alleged and continues to allege that the Coverage Action is non-core. Additionally, TIG has not consented to the Court making final findings of fact and conclusions of law with respect to the Coverage Action. Further, TIG has properly made a jury trial demand and has not consented to a jury trial in the Bankruptcy Court.[4]

8.      At the initial status conference in the Coverage Action on May 3, 2005, the Bankruptcy Court inquired as to whether judicial economy and efficiency would be better served by the Bankruptcy Court's abstention of the Coverage Action in favor of an alternate forum that is more accustom to resolving coverage issues. TIG filed its response to that inquiry on May 24, 2005, indicating that it would be filing the instant motion to address the Bankruptcy Court's apparent concerns regarding judicial efficiency.

## III.    ARGUMENT

### A.     The Applicable Standard To Withdrawal The Reference.

---

[3] A copy of the Complaint in the Coverage Action is attached hereto at Exhibit B.

[4] It is worth noting that the Ayer Plaintiffs likewise demanded a jury trial in their answer. *See* Exhibit C.

4

9. 28 U.S.C. § 157 (d) provides, in relevant part, "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Although the statute does not define "for cause shown," the "goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources and expediting the bankruptcy process are among the factors that the district court should consider." *F.T.C. v. American Institute For Research and Development*, 219 B.R. 639, 647 (D. Mass. 1998); *In re Dooley Plastic Co., Inc.*, 182 B.R. 73, 80 (D. Mass. 1994). Another significant factor that the district court should consider is whether the parties have requested a jury trial because, pursuant to local rule and case law -- absent the express consent of *both* parties -- the bankruptcy court may not hold a jury trial in a non-core matter. *See* 28 U.S.C. § 157(e); MLBR 9015-1.

10. A district court's consideration of a motion to withdraw the reference typically begins with an evaluation of whether the claim is core or non-core, since the status of the claim bears directly on the efficiency and uniformity factors. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993), *cert dismissed*, 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed. 2d 88 (1994). As the Second Circuit has explained, "the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court." *Id.* The core/non-core status is also important in evaluating a party's jury trial demand as it provides the requisite "cause" to withdraw the reference. *See, e.g. In re Babcock & Wilcox Co.*, 2001

5

WL 1018366 at *4 (E.D.La. July 2, 2001) ("the inability of a bankruptcy court to hold a

jury trial in a related matter is a ground for a district court to withdraw the reference from

a bankruptcy court"); *NDEP Corp. v. Handle-It Inc. (In re NDEP Corp.)*, 203 B.R. 905,

908 (D.Del. 1996) ("[w]hen there has been a jury demand in a non-core proceeding,

courts generally find that judicial economy would be served by withdrawal of the

reference because the district court must (absent the consent of all parties) hold the trial");

*In re Globe Parcel Service, Inc.*, 75 B.R. 381, 382 n.2 (E.D. Pa. 1987) ("a proper jury

demand in a non-core proceeding as 'cause' for withdrawal").[5]

### B.    Because the Coverage Action Is a Non-Core Proceeding, Cause Exists to Withdraw the Reference

11.    A bankruptcy court's jurisdiction is governed by 28 U.S.C. §157(b)(1),

which provides, in part, that "[b]ankruptcy judges may hear and determine all cases under

title 11 and core proceedings arising under title 11, or arising in a case under title 11." As

for the scope of a "core" proceeding, 28 U.S.C. §157(b)(2) provides a non-exhaustive list

of matters that are considered core proceedings, but does not otherwise define the term.[6]

---

[5] Even if the District Court were to find that the Coverage Action is a core matter, the jury trial issue still provides the necessary "cause" to withdraw the reference. Specifically, because TIG does not consent to a jury trial in Bankruptcy Court, regardless of whether the proceeding is core/non-core, the trial portion of the Coverage Action must be transferred to the District Court. As such, it promotes judicial economy and better use of the parties' resources to transfer the Coverage Action now, prior to the commencement of pre-trial proceedings commenced and prior to a bankruptcy court judge becoming familiar with the facts of the case. *See Northwestern Institute*, 272 B.R. at 111-12 (even though adversary proceeding was core, fact that trial portion would need to be transferred to the district court warranted withdrawal of the entire case to better promote judicial economy).

[6] 28 U.S.C. §157(b)(2) provides:

    Core proceedings include, but are not limited to --
    (A)    matters concerning the administration of the estate;
    (B)    allowance or disallowance of claims against the estate or exceptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
    (C)    counterclaims by the estate against persons filing claims against the estate;
    (D)    orders in respect to obtaining credit;
    (E)    orders to turn over property of the estate;

12.    Addressing the core/non-core distinction, in *In re Molten Metal Technology, Inc.*, 271 B.R. 711 (Bankr. D. Mass. 2002), the district court explained that,

> "to qualify as core, a proceeding must at least be so integral to the bankruptcy process that Congress has the power under Article I of the Constitution to authorize a specialized, non-Article III judge to render a final decision on the merits. Accordingly, under the guiding precedent in this Circuit, a proceeding is 'core' under §157(b) only if it is integral to the basic function of the bankruptcy court and historically has been entrusted to the bankruptcy court, not reserved exclusively for Article III courts."[7]

*Id.,* at 714. As such, core proceedings do not implicate private, state-created rights that do not seek to adjust debtor-creditor rights. *In re Monarch Capital Corp.*, 173 B.R. 31, 35 (D. Mass. 1994). In contrast, non-core proceedings are "state or federal claims that arise between parties within a bankruptcy proceeding … [which could] survive outside bankruptcy, and in the absence of bankruptcy, would have been initiated in a state or district court'" *In re Malden Mills Indus.*, 277 B.R. 449, 454 (Bankr. D. Mass. 2002) (quoting *Ralls v. Docktor Pet Centers, Inc.*, 177 B.R. 420, 424-25 (D.Mass. 1995)).

---

(F)    proceedings to determine, avoid, or recover preferences;
(G)    motions to terminate, annul, or modify the automatic stay;
(H)    proceedings to determine, avoid, or recover fraudulent conveyances;
(I)    determinations as to the dischargeability of particular debts;
(J)    objections to discharge;
(K)    determinations of the validity, extent, or priority of liens;
(L)    confirmations of plans;
(M)    orders approving the use or lease of property, including the use of cash collateral;
(N)    orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O)    other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

[7] The distinction between core and non-core matters derives from the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), in which the Supreme Court determined that granting Article I bankruptcy judges the authority to hear private law disputes that were related to the bankruptcy case -- such as state law contract claims whose resolution was unaffected by substantive bankruptcy law -- was a violation of the Constitution. As a result, Congress enacted the 1984 Bankruptcy Amendments, which legislated the core/non-core distinction and granted bankruptcy courts the authority to hear related to, non-core proceedings, in which the bankruptcy court would submit proposed findings of fact and conclusions of law to the district court.

13.    As a general rule, disputes arising from pre-petition events are considered
non-core since the parties' dispute existed prior to the commencement of the bankruptcy
proceeding. *Malden Mills*, 277 B.R. at 449. *See also In re Spookyworld, Inc.*, 266 B.R.
1, 8 (Bankr. D. Mass. 2001) ("The better view is that claims arising pre-petition and
continuing post-petition should be deemed non-core."). Here, the Coverage Action is a
non-core proceeding for two reasons. First, the Coverage Action, the resolution of which
turns on state-created rights, could exist wholly outside of the bankruptcy. In other
words, the Coverage Action is not dependent in any way on the bankruptcy case.
Second, the Coverage Action relates to a pre-petition contract namely, the Policy.
Indeed, the District Court Coverage Action was properly filed pre-petition in a non-
bankruptcy court.

        *i.    The Coverage Action Implicates a State-Created Right*

14.    Courts in this jurisdiction have found disputes arising under a policy of
insurance, such as the Coverage Action, to be a non-core proceeding. By way of
example, in *In re Molten Metal Technology, Inc.*, 271 B.R. 711 (Bankr. D. Mass. 2002),
the district court determined that claims relating to the parties' dispute over the
applicability of an exclusion in an insurance policy issued pre-petition constituted a non-
core proceeding. More specifically, in *Molten Metals*, the Chapter 11 trustee (the
"Trustee") filed an adversary proceeding against the debtor's pre-petition insurers after
they denied coverage for claims brought against the debtor's directors and officers on the
basis that, *inter alia*, the "insured v. insured" exclusion barred coverage. Thereafter, the
Trustee filed a motion for partial summary judgment seeking a declaration as to the

applicability, or inapplicability, of the "insured v. insured" exclusion to the pending claims against the debtor's directors and officers. *Id.* at 713.

15.    With respect solely to applicability of the exclusion, the district court held that the dispute was non-core because, while the outcome may affect the amount of funds available for distribution to creditors, the dispute was neither integral to the bankruptcy process nor affected the debtor's relationship with its creditors. As such, the parties' dispute was ancillary to the bankruptcy relating only to the liquidation of the pre-petition claims of the debtor. The *Molten Metals* court explained that the dispute "does not arise under the Bankruptcy Code but under the pre-petition insurance policies and the state law that governs their interpretation. Actions of this type need not and usually do not arise in bankruptcy, rather they usually arise in conjunction with state court tort and business litigation." *Id.* at 714. Similar to *Molten Metals*, the Coverage Action is a dispute derived from state law. And, while the outcome of the Coverage Action may affect the amount of funds available for distribution – through the return of the premium dollars paid by the Debtor or a determination as to applicable limit, if any, under the Policy[8] – the Coverage Action does not affect the debtor's relationship with its creditors.  *See, e.g., Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter-Hayden Co.),* 304 B.R. 725, 731 (Bankr. D.Md. 2004) (action regarding availability of insurance proceeds for asbestos-related liabilities was non-core proceeding even though availability of proceeds would impact administration of estate); *Investment & Tax Serv., Inc. v. Western States Life Ins. Co. (In re Investment & Tas Serv., Inc.),* 1989 WL 62098, at *1, *7 (D.

---

[8] A determination of whether the Policy's proceeds (in contrast to the Policy itself) are property of the Debtor's estate can only be made upon the filing of an adversary proceeding seeking such a determination. *See* Rule 7001 of Federal Rules of Bankruptcy Procedure. To date, no party has filed such a declaratory action.

9

Minn. June 9, 1989) (trustee's insurance coverage action to recover $1 million in life
insurance proceeds, which was the only significant asset of the estate, was non-core
proceeding); *Lawrence Group*, 285 B.R. at 788 (adjudication of coverage dispute in
which only relationship to bankruptcy proceeding was that the determination of action
would affect ultimate size of the debtor's estate was non-core).

   16.   Consistent with *Molten Metals*, other courts have similarly concluded that
insurance coverage disputes are non-core as they are "a creation of state contract law and
... could be vindicated in an ordinary breach of contract suit if the [insured] were not
bankruptcy." *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997)
("[c]ore proceedings are actions by or against the debtor that arise under the Bankruptcy
Code in the strong sense that the Code itself is the source of the claimant's right or
remedy, rather than just the procedural vehicle for the assertion of a right conferred by
some other body of law, normally state law"). *See also Rosen-Novak Auto Co. v. Honz*,
783 F.2d 739, 742 (8th Cir. 1986) (holding that insurance coverage dispute was non-core
because it could have been brought in a separate action outside bankruptcy); *Amatex
Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 107 B.R. 856, 863 (Bankr. E.D.Pa.
1989) (holding that insurance coverage questions involving debtor with asbestos-related
liability were non-core); *In re National Century Financial Enterprises*, 312 B.R. 344
(Bankr. S.D. Ohio 2002) (coverage dispute, which included a count seeking rescission of
the policy, was deemed non-core as debtor had commenced coverage action in state court
pre-petition thereby evidencing that action was not dependent on the underlying
bankruptcy case and was essentially a state law dispute); *In re Lawrence Group, Inc*, 285
B.R. 734, 787 (N.D.N.Y. 2002)(coverage dispute regarding an insurance contract entered

10

into pre-petition in which the dispute could arise outside the bankruptcy case factored into the court's determination that the dispute was non-core); *In re The Babcock & Wilcox Co.*, 2001 WL 1018366 (E.D.La. July 2, 2001) *1 at *4 (declaratory judgment action to determine scope of coverage was a "creature of state law" not involving rights created by bankruptcy law and thus was non-core matter).

ii.    *Because The Coverage Action Relates To a Pre-Petition Contract, the Coverage Action Is a "Non-Core" Proceeding.*

17.    Courts in this jurisdiction have consistently held that actions involving the respective rights of debtors and third parties to pre-petition contracts, which are governed by state law constitute, are non-core proceedings.[9] *See, e.g, In re Spookyworld, Inc.*, 266 B.R. at 8 (with respect to disputes based on events which commenced pre-petition but continued post-petition, the better view is that such claims arising pre-petition and continuing post-petition should be held to be non-core); *In re Boston Regional Medical Center Inc.*, 265 B.R. 645, 650-51 (Bankr. D. Mass. 2001) (debtor's complaint seeking a determination of the validity and extent of debtor's pre-petition interests in trusts was a matter of state law, which could have easily been brought pre-petition, and thus was non-core).

18.    Here, there can be no dispute that the Policy was issued to Conant pre-petition.[10] Likewise, there can be no dispute that the Coverage Action is seeking certain determinations as to the respective rights of the parties under a pre-petition contract. As such, the parties' dispute relates to the issuance and interpretation of the pre-petition

---

[9] Courts in other jurisdictions have held likewise. *See also In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997) (declaratory judgment action against debtor to determine rights under pre-petition insurance contracts is non-core); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (breach of contract action by debtor against party to pre-petition contract, who filed no claim with bankruptcy court, was non-core).

[10] The Underlying Liability Action was also filed pre-petition.

11

Policy which is resolved under applicable state law. Accordingly, because the Coverage
Action arises out of events that occurred pre-petition and resolution of the proceeding
turns cn state law, the Coverage Action constitutes a non-core proceeding.

     *iii.    The Non-Core Status of the Coverage Action Warrants Withdrawal of the
         Reference.*

     19.    Given the non-core status of the Coverage Action, withdrawal of the
refererce from the Bankruptcy Court is warranted. Specifically, it is highly likely that
the District Court will become substantially involved in this proceeding. For example,
even with respect to a motion for summary judgment, the Bankruptcy Court can only
make recommendations of findings of fact and conclusions of law, which then must be
reviewed *de novo* by an objecting party. *See In re Orion Pictures Corp.*, 4 F.3d 1095 (2nd
Cir. 1993). As such, a single proceeding in the District Court would promote judicial
economy by avoiding unnecessary costs. *See Acolyte Electric Corp. v. City of New York*,
69 B.R. 155, 165-66 (Bankr. E.D.N.Y. 1986) (the nature of the proceeding and judicial
economy are factors that can justify withdrawal for cause). Likewise, a single proceeding
would foster the economical use of the debtors' and creditors' resources because the
parties would be litigating the Coverage Action in one -- as opposed two -- forums.

    **C.    TIG's Right to a Jury Trial is Cause to Withdraw the Reference.**

     20.    TIG properly asserted a jury demand, as did the Ayer Plaintiffs in their
answer to that Complaint. Federal Rules of Civil Procedure 38 and 57 afford any party
seeking declaratory judgment the right to demand a trial by jury as allowed by the
Seventh Amendment to the Constitution. *See Simler v. Conner*, 372 U.S. 221, 223 (1963)
(per curiam); *see also United States Fidelity & Guaranty Co. v. Nauer*, 1 F.R.D. 547, 548
(D. Mass. 1941). The Supreme Court has held where the "questions involved [in a

<div align="center">12</div>

declaratory judgment action] are traditional common-law issues," they "*can be and should be* submitted to a jury." *Simler,* 372 U.S. at 223 (emphasis added); *see also Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed. 26 (1989) (explaining that "Suits at common law", as defined by the Seventh Amendment, refer to disputes where legal rights -- as opposed to equitable rights -- are to be determined). Federal courts are clear that *either* party may assert the right to be heard by a jury. *See Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 504 (1959) (recognizing that 22 U.S.C. § 2201 "specifically reserves the right to jury trial for both parties."); *Music Suppliers, Inc. v. London Records, Inc.* 1988 WL 34277, at *2 (D. Mass. Feb. 22, 1988) (same); *see also* Fed. R. Civ. P. 38.

21.     The Coverage Action raises questions at law and accordingly, TIG must be allowed to pursue its claims before a jury. More specifically, in the Coverage Action TIG seeks a declaration to resolve its obligations, if any, to Conant under the insurance contract. Additionally, TIG seeks a declaration that Conant breached the contract by violating certain condition precedents and, as a result, the Policy is void. Where, as here, an insurer "*anticipates* a suit thereon by the insured . . . and to avoid delay brings the matter before the court by petition for declaratory relief[,] . . . the issues are ones which in the absence of the statute for declaratory relief would be tried at law by a court and jury."[11]  *Nauer,* 1 F.R.D. at 548 (internal quotation and quotation marks omitted) (emphasis added). *See also See Beacon Theatres,* 79 S.Ct. 948 at 953 (a party should not

---

[11] Notably, the "anticipation" concept is entirely consistent with the strong suggestion from the Massachusetts Supreme Judicial Court that an insurer refrain from engaging in unilateral, self-serving conduct in connection with coverage disputes. *See Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Company,* 406 Mass. 7, 15 (1989) (encouraging insurers to seek declaratory relief to resolve coverage issues quickly and efficiently).

13

be deprived of its right to a jury trial merely because it took advantage of the availability
of declaratory relief to resolve a dispute).

22.     Moreover, TIG's claim for rescission raises allegations of "fraud in the
procurement of insurance." *See American Life Ins. Co. v. Stewart*, 300 U.S. 203, 212
(1937); *Guardian Life Ins. Co. v. Claydon*, 855 F. Supp. 43, 44 (D. Conn. 1994). There
can be no dispute that TIG's rescission claim would be a defense at law, not equity, to
either a breach of contract claim by Conant or reach and apply action by the Ayer
Plaintiffs. *Claydon*, 855 F. Supp. at 44 ("[m]isrepresentations on an application for
insurance under a plan would violate that plan, hence a suit to rescind the policy is an
action to enforce the terms of the plan"); *Stewart*, 300 U.S. at 212 (pre-Declaratory
Judgment Act case which recognized "procurement of insurance" as a defense to an
action upon the policy). As the issues raised in the Coverage Action could have risen in
an action by another party -- Conant or the Ayer Plaintiffs -- there is undeniably a right to
a jury trial. Accordingly, a jury should make the findings of fact required to resolve
TIG's action for no coverage. *See Music Suppliers, Inc. v. London Records, Inc.*, 1988
WL 34277 (D.Mass.).

23.     As TIG does not consent to the Bankruptcy Court conducting the jury
trial, pursuant to local rule, the Bankruptcy Court may only preside over the pretrial
proceedings. *See* MLBR 9015-1, which provides:

The bankruptcy judge may conduct a jury trial pursuant to 28 U.S.C. § 157(e) if
the right to a jury trial applies and a timely demand has been made, provided that
the parties file a pleading entitled "Joint Statement of Consent to Jury Trial in the
Bankruptcy Court" no later than the date established by the Court for the filing of
the Joint Pretrial Memorandum pursuant to MLBR 7016-1 or such other time as
the Court may fix. If the parties do not file the Joint Statement of Consent to
Jury Trial in the Bankruptcy Court, the Bankruptcy Court shall conduct all pretrial

14

proceedings and thereafter transfer the case or proceeding to the appropriate
United States District Court for trial.

As TIG has not filed (nor will it consent to the filing) the required Joint Statement of

Consent to Jury Trial, the Coverage Action must be transferred to the District Court for

trial.

24.     Given that the trial of the Coverage Action will be conducted in the

District Court, considerations of judicial economy warrant withdraw the reference.

Notably, these considerations are heightened by the fact that the parties have yet to

commence discovery or file dispositive motions. *See, e.g. Northwestern Institute of

Psychiatry, Inc. v. Travelers Indemnity Co.*, 272 B.R. 104,   (E.D. Pa. 2001) (where

district court had option of transferring entire adversary proceeding or just trial portion,

court found that withdrawal of entire proceeding better promoted judicial economy and

was a better use of parties' resources).

IV.    **CONCLUSION**

As the Coverage Action is non-core and the parties have requested a jury trial that

cannot be overseen by the Bankruptcy Court, cause exists to withdraw the reference to

the District Court.

<div style="margin-left:40%">

TIG INSURANCE COMPANY

By its attorneys,


/s/ *Scott H. Moskol*
Nancy D. Adams, BBO No. 560970
Scott H. Moskol, BBO No.628323
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo P.C.
One Financial Center
Boston, Massachusetts 02111
Tel.: (617) 542-6000
Fax: (617) 542-2241


Of Counsel:

Peter G. Thompson, Esq.
Jeremy Simon, Esq.
Thompson, Loss & Judge, LLP
1919 Pennsylvania Avenue, NW
Suite M-200
Washington, DC 20006-3458
Tel: (202) 772-5171
Fax: (202) 772-5180

</div>

Dated:  June 7, 2005

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
TIG Insurance Company

**DEFENDANTS**
Jon Conant, Hilda Ayer Anderson and The Ayer-Anderson Foundation and John Aquino, Chapter 7 Trustee (Nominal

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)
Incorporated in California and a principal place of business in Irving, TX

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Nancy D. Adams, Esq. and Scott H. Moskol, Esq., Mintz Levin
One Financial Center, Boston, MA 02111, (617) 542-6000

Attorneys (If Known)
William C. Nystrom, Esq., Nystrom Beckman & Paris LLP
10 St. James Avenue, 16th Fl., Boston, MA 02116

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☒ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 157
Brief description of cause:
Withdrawal of Reference of insurance rescission/coverage action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $**
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE ___  DOCKET NUMBER ___

DATE 06/07/2005
SIGNATURE OF ATTORNEY OF RECORD
✓ Nancy D. Adams, BBO 560970

## FOR OFFICE USE ONLY

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___